UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| In re:<br>GERTRUDE JOAN VAN ECK *a/k/a*<br>GERTRUDE J. VERMANDE<br><br>　　　　DEBTOR. | CASE NO.  05-31239 (ASD)<br>CHAPTER  7<br><br>RE: DOC. I.D. NO.  65 |

<u>APPEARANCES</u>:

Patrick W. Boatman, Esq.
Law Offices of Patrick W. Boatman, LLC
111 Founders Plaza,  Suite 1000,
East Hartford, CT 06108
Counsel for Debtor

Anthony J. LaBella, Esq.
Ury & Moskow, LLC
883 Black Rock Turnpike,
Fairfield, CT 06825
Counsel for Atlantic National
 Trust LLC

Richard D. Patterson, Esq.
Patterson & Brencher
730 Main Street,  P.O. Box 512,
Branford, CT 06405
Counsel for Executor of the Debtor's Estate

Timothy D. Miltenberger, Esq.
Coan, Lewendon, Gulliver &
Miltenberger, LLC
495 Orange Street,
New Haven, CT 06511
Counsel for Chapter 7 Trustee

**MEMORANDUM AND ORDER ON DEBTOR'S OBJECTION TO CLAIM**

DABROWSKI, ALBERT S., Chief United States Bankruptcy Judge

## I.    INTRODUCTION

Before the Court are the <u>Debtor's Objection to Proof of Claim No. 1-1 Filed on Behalf of Atlantic National Trust LLC</u> (hereafter the "Objection"), Doc. I.D. No. 65, and the reply thereto (hereafter, the "Reply"), Doc. I.D. No. 71, filed by Atlantic National Trust LLC (hereafter, "Atlantic").  For the reasons set forth hereafter, the Objection is sustained and Atlantic's claim is disallowed in its entirety.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over

the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(B).

### III.    BACKGROUND

On March 22, 2005 (hereafter, the "Petition Date"), Gertrude Joan Van Eck, *a/k/a* Gertrude J. Vermande (hereafter, the "Debtor "),[1] commenced Bankruptcy Case No. 05-31239 by filing a petition (hereafter, the "Petition") under Chapter 7 of the Bankruptcy Code.

As of the Petition Date, Atlantic was the holder of a mortgage and note on a parcel of commercial property located at 300 Main Street, East Haven, Connecticut (hereafter, the "Property") owned jointly by the Debtor and her husband William. Atlantic had, on June 2, 2004, obtained a prepetition judgment of foreclosure by sale in the Superior Court for the State of Connecticut (hereafter, the "Superior Court").

Anticipating that the proceeds from the sale of the Property would be insufficient to satisfy the mortgage debt, Atlantic had applied to the Superior Court for a prejudgment remedy of attachment on the Debtor's residence (hereafter, the "Residence") to secure its

---

[1] The Debtor died on July 13, 2006 during the pendency of her case. Fed. R. Bankr. P. 1016 provides, in relevant part:
> Death or incompetency of the debtor shall not abate a liquidation case under Chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

For purposes of this proceeding, the Court will refer to the actions taken on her behalf by the executor of her estate as those of the Debtor.

2

expected deficiency judgment. Before the Superior Court granted such application, the Debtor transferred titles to the Residence and another property located in Oregon to family members. Atlantic filed fraudulent transfer actions in the Connecticut[2] and Oregon state courts seeking to recover such properties in order to secure the anticipated deficiency from the foreclosure sale. All such state court proceedings were stayed, pursuant to the automatic stay of Bankruptcy Code Section 362(a), by the filing of the Petition.

On April 26, 2006, this Court granted Atlantic's motion for relief from the automatic stay to permit it to proceed with the foreclosure sale. The Superior Court, on May 22, 2006, amended its judgment of foreclosure by sale; the amended judgment included an award to Atlantic of $52,406.12 for its attorney's fees incurred to such date. At a foreclosure auction held on October 21, 2006, the Property was sold for $900,000,[3] an amount considerably in excess of the debt of approximately $400,000 (Exh. 2 at 25) owed to Atlantic.

In January, 2007, Atlantic filed a proof of claim, No. 1-1 (hereafter, the "Proof of Claim"),with this Court and a motion in the Superior Court for a supplemental judgment for additional attorney's fees and costs. In both documents, Atlantic asserted a claim for $71,380.70 for attorney's fees and costs in addition to those included in the Superior Court's May 22, 2006 amended judgment. The amounts so requested were broken down as follows:

---

[2] It appears from the record that Atlantic commenced two fraudulent transfer actions against the Debtor in the Superior Court. The first, Docket No. CV-04-4000190, was dismissed prior to the Petition Date by the Superior Court and no fees or costs therefor are included in the documentation attached to Atlantic's proof of claim. References herein to the Connecticut fraudulent transfer action pertain only to the second such action, Docket No. CV-05-4007690, dismissed by the Superior Court on June 1, 2007.

[3] The Property was sold subject to a lien by the Town of East Haven for unpaid property taxes of $147,681.92.

| Explanation | Fees | Costs |
|---|---|---|
| Fees and Costs incurred after May 22, 2006 in the foreclosure action (CV-00-0443547S) | $ 7,500.00 | $ 70.00 |
| Fees and Costs Incurred in the Connecticut fraudulent transfer action (CV-05-4007690S) | 9,090.00 | 2,757.82 |
| Fees and Costs Incurred in the Oregon fraudulent transfer action (No. 0402-01978) | 49,031.50 | 2,931.38 |
| Total | $ 65,621.50 | $ 5,759.20 |

The Debtor objected to inclusion of fees and costs for the fraudulent transfer actions and the Superior Court set the matter for hearing. Atlantic argued at the Superior Court hearing that:

> The additional attorney's fees that the plaintiff [Atlantic] is seeking is [sic] for the prosecution of [the fraudulent conveyance] actions.
>
> The plaintiff's entitled to that principally because the note and mortgage in this case entitled the plaintiff to its collection fees. But more than that, your Honor, these defendants were the cause of these additional attorney's fees. They transferred properties out in Oregon and here in Connecticut and vigorously litigated those matters.

(Exh. 2 at 9.)

The Superior Court entered an order dated March 22, 2007, providing:

> $6,600[4] additional attorneys fees awarded and $70 additional costs awarded. Attorney fees and costs in connection with the fraudulent conveyance and Oregon action disallowed.

(Exh. 3.)(footnote added).

Shortly thereafter, Atlantic received payment in full, from the sale proceeds, of all principal and interest due under the mortgage note and all fees and costs awarded by the

---

[4] The difference between the $7,500 sought and the $6,600 awarded appears to be attributable to duplicate entries for certain items.

4

Superior Court, including the additional fees and costs totaling $6,670 awarded in the supplemental judgment of March 22, 2007. Because the sale price was sufficient to pay Atlantic the full amount of its judgment, there was no deficiency, and Atlantic's state court fraudulent transfer actions against the Debtor have been rendered moot.[5]

The Debtor, on April 24, 2007, filed the Objection[6] to which Atlantic filed a reply. The Court, on March 26, 2008, held a hearing (hereafter, the "Hearing") at which time it admitted documentary evidence and heard the arguments of Atlantic and the Debtor, as well as the argument, in support of the Objection, of the Chapter 7 trustee. At the Hearing, counsel for Atlantic conceded that the its claim should be reduced by the portion of its claim for fees and expenses incurred in prosecuting the foreclosure action, since it had already received payment therefor from the proceeds of the foreclosure sale. Atlantic seeks allowance of the balance of its claim, $63,810.70, for the fees and expenses incurred in prosecuting the fraudulent transfer actions. Following the Hearing, the Court took the matter under advisement.

## IV.   DISCUSSION

> Under the American Rule, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); see Hauenstein v. Lynham, 100 U.S. 483, 490-491, 25 L.Ed. 628 (1880); Arcambel v. Wiseman, 3 Dall. 306, 1 L.Ed. 613 (1796). This default rule can, of course, be overcome by statute.

---

[5] The Connecticut fraudulent transfer action was dismissed by the Superior Court on June 1, 2007. The Court is not aware of the disposition of the Oregon action except for the Debtor's assertion in her supporting memorandum that it was slated for administrative dismissal if no action was taken by August 1, 2008. (Debtor's Mem. at 5).

[6] As a threshold matter, the Court concludes that, because the proceeds of the foreclosure sale rendered the estate solvent, the Debtor has standing to object to Atlantic's claim. See, e.g. In re Jorczak, 314 B.R. 474, 479 (Bankr. D.Conn.2004) ("[I]f there is a sufficient possibility that the estate is solvent and will yield a surplus to the debtor, the chapter 7 debtor has standing to object to proofs of claim.").

> Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). It can also be overcome by an "enforceable contract" allocating attorney's fees. Ibid.
>
> . . .
>
> [U]nder the terms of the current Bankruptcy Code, it remains true that an otherwise enforceable contract allocating attorney's fees ( i.e., one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise.
>
> . . .
>
> Section 502(b)(1) disallows any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." This provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy.
>
> . . .
>
> This reading of § 502(b)(1) is consistent not only with the plain statutory text, but also with the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). That principle requires bankruptcy courts to consult state law in determining the validity of most claims. See ibid.
>
> Indeed, we have long recognized that the " 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law.' " Ibid. (quoting Butner v. United States, 440 U.S. 48, 57, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); citation omitted). Accordingly, when the Bankruptcy Code uses the word " claim" - which the Code itself defines as a "right to payment," 11 U.S.C. § 101(5)(A) - it is usually referring to a right to payment recognized under state law.

Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co., 549 U.S. 443, 450-451, 127 S.Ct. 1199, 1204 - 1205 (2007) (some citations omitted). Accordingly, allowance of the Proof of Claim depends on whether such claim is enforceable under Connecticut state law.

Atlantic has not prevailed in either of the fraudulent transfer actions, nor has it received any award of fees and costs therein, despite its allegations that the Debtor engaged in dilatory defense tactics. Accordingly, Atlantic's entitlement to the fees and

costs incurred in the fraudulent transfer actions must arise, if at all, under the terms of the mortgage note. The Debtor argues that, under the doctrine of collateral estoppel, the Superior Court's March 22, 2007 judgment disallowing such fees and costs precludes relitigation of whether they are payable by the Debtor under the mortgage note.

"Collateral estoppel expresses . . . the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." <u>Gladysz v. Planning and Zoning Com'n of Town of Plainville</u>, 256 Conn. 249, 260 (2001) (citations and internal quotation marks omitted). Connecticut law applies to determine the preclusive effect of the Superior Court judgment. <u>Marrese v. American Academy of Orthopaedic Surgeons</u>, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331 - 1332 (1985).

> Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment.
> An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered.

<u>Jackson v. R.G. Whipple</u>, 225 Conn. 705, 714-15 (1993) (citations, quotation marks and emphases omitted). The question of whether the provisions of mortgage note entitled Atlantic to payment of the fees and costs incurred in its pursuit of the fraudulent transfer actions was raised and actually litigated in the Superior Court foreclosure action - where Atlantic asserted the identical claim for fees and expenses and presented the very same arguments as in this proceeding (<u>See</u> Exh. 2 (transcript of the March 12, 2007 Superior Court hearing)) - and was necessarily determined in the Superior Court's March 22, 2007

judgment that "Attorney fees and costs in connection with the fraudulent conveyance and Oregon action [are] disallowed." (Exh. 3.)

In accordance with the Superior Court judgment and the principles of collateral estoppel, the Court concludes that the terms of the mortgage note do not permit Atlantic to recover the fees and costs incurred in pursuing the fraudulent transfer actions. Because Atlantic's claim is unenforceable under applicable nonbankruptcy law, it shall be disallowed in its entirety pursuant to Bankruptcy Code §502(b)(1).

### V.     CONCLUSION

In accordance with the foregoing discussion, the Debtor's Objection is **SUSTAINED** and Atlantic's claim (Proof of Claim No 1-1) is **DISALLOWED** in its entirety.

**IT IS SO ORDERED.**

Dated: April 13, 2009                                                                BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge